Elva VILLARREAL, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of the Social Security Administration, Defendant.

CIVIL ACTION NO. SA–16–CA–272–FB

United States District Court,
W.D. Texas, San Antonio Division.

Signed November 22, 2016

---

David Fallon Chermol, Chermol & Fishman, LLC, Philadelphia, PA, for Plaintiff.

Henry Ernest Velte, III, Office of the General Counsel, Region VI Social Security Administration, Dallas, TX, for Defendant.

### ORDER ACCEPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

FRED BIERY, UNITED STATES DISTRICT JUDGE

Before the Court is the Report and Recommendation of the United States Magistrate Judge (docket no. 17). No objections to the Report and Recommendation have been filed.[1]

Because no party has objected to the Magistrate Judge's Report and Recommendation, the Court need not conduct a de novo review. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). The Court has reviewed the Report and Recommendation and finds its reasoning to be neither clearly erroneous nor contrary to law. *United States v. Wilson,* 864 F.2d 1219, 1221 (5th Cir.), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989).

IT IS THEREFORE ORDERED that the Report and Recommendation of the United States Magistrate Judge (docket no. 17) is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1) such that plaintiff's request for a remand (docket no. 12 at page 16) is GRANTED and the ALJ's decision is REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for reconsideration.

IT IS FURTHER ORDERED that motions pending with the Court, if any, are

---

1. Any party who desires to object to a Magistrate's findings and recommendations must serve and file his written objections within ten days after being served with a copy of the findings and recommendation. 28 U.S.C. § 635(b)(1). Service upon a party may be made by mailing a copy to the party's last known address or by electronic means. Fed. R. Civ. P. 5(b)(B), (D). Service by mail is complete upon mailing. Service by electronic means is complete upon transmission. *Id.*

Dismissed as Moot and this case is CLOSED.

It is so ORDERED.

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

PAMELA A. MATHY, UNITED STATES MAGISTRATE JUDGE

**TO: Hon. Fred Biery United States District Judge**

Pursuant to the informal referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) and (h) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

### I. JURISDICTION

The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

### II. BACKGROUND and SUMMARY OF PROCEDURAL HISTORY

This is an action to review a decision of the Commissioner of the Social Security Administration under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Plaintiff Elva Villarreal initiated this action pursuant to 42 U.S.C. § 405(g) seeking review of the determination of Carolyn W. Colvin, the acting Commissioner of the Social Security Administration, that plaintiff is not disabled and not entitled to receive disability insurance benefits ("DIB").

Plaintiff protectively filed an application for Title II DIB on July 17, 2012, alleging disability since January 27, 2012.[1] The Social Security Administration ("SSA") denied DIB initially on January 2, 2013,[2] and upon reconsideration on April 15, 2013.[3] On August 7, 2014, Don Harper, an administrative law judge ("ALJ"), held a hearing and considered plaintiff's claims de novo.[4] Plaintiff was represented by an attorney at the hearing, and the ALJ received testimony from plaintiff as well as from a vocational expert ("VE"), Judith Harper, and a medical expert ("ME"), George Decherd, M.D.[5] The ALJ issued a written opinion on October 20, 2014, denying benefits and finding that plaintiff had not been disabled from January 27, 2012, through the date of his decision.[6] Plaintiff requested Appeals Council review of the ALJ's decision, and on January 19, 2014, the Council concluded that no basis existed to grant review.[7] Thus, the ALJ's determination became the final decision of the Commissioner. Plaintiff now appeals that determination.

Plaintiff filed an appeal of the Commissioner's determination and, on September 23, 2016, filed an opening brief raising two main issues, summarized below, asking the Court to reverse the Commissioner's decision.[8] On October 31, 2016, the Commissioner filed a responsive brief, arguing, in sum, that the ALJ's decision is supported by proper legal standards and substantial evidence.[9] As of the time of the tendering

1. TR 137.

2. Id. at 49.

3. Id. at 61.

4. Id. at 26–48.

5. Id.

6. Id. at 10–21.

7. Id. at 1–3.

8. Docket no. 12.

9. Docket no. 15.

of this decision to the District Clerk for filing, plaintiff had not filed a reply brief and the time to do so has expired.

## III. ISSUES

1. Whether substantial evidence supports the ALJ's decision that plaintiff was not disabled under the Social Security Act.

2. Whether the decision comports with relevant legal standards.

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Court is limited to a determination of whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.[10] Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[11] It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.[12]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[13] "The court does not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[14]

Conflicts in the evidence are for the Commissioner to resolve.[15] Four elements of proof are weighed in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[16] Moreover, " '[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.' "[17]

## V. ALJ'S FINDINGS AND PLAINTIFF'S CONTENTIONS

### A. Summary of the ALJ's Decision

The ALJ stated the issue was whether plaintiff was disabled pursuant to sections 216(i) and 223(d) of the Social Security Act.[18] The ALJ defined disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, that could be expected to result in death, or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.[19] The ALJ noted there was an additional issue with respect to plaintiff's claim for a period of disability and DIB—whether the insured status requirements of sections 216(i) and 223 were met.[20] The ALJ found plaintiff's earnings

10. Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001).

11. Id.

12. Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988).

13. Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

14. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).

15. Id.

16. Martinez, 64 F.3d at 174.

17. Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) (quoting Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)).

18. TR 10.

19. Id.

20. Id.

record showed plaintiff had acquired sufficient quarters of coverage to remain insured through June 30, 2017.[21] Thus, according to the ALJ, plaintiff needed to establish disability on or before that date to be entitled to a period of disability and DIB.[22]

The ALJ next explained the five-step sequential evaluation process for determining whether an individual is disabled, and noted that the steps are to be followed in order.[23] He then analyzed whether plaintiff met the criteria for disability pursuant to these steps and made his findings of facts and conclusions of law.[24]

**Step 1 findings.** The ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 27, 2012.[25]

**Step 2 findings.** The ALJ found that plaintiff had the severe impairments of "history of diverticulitis," diabetes mellitus, neuropathy, hypertension, depressive disorder and anxiety disorder.[26]

**Step 3 findings.** The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[27] The ALJ expressly considered: listing 4.00(H)(1) in connection with claimant's hypertension; listing 5.06 in connection with claimant's diverticulitis; listing 9.00B5 in connection with claimant's diabetes mellitus; and listing 11.14 in connection with claimant's peripheral neuropathy.[28]

The ALJ also considered listings section 12.04 and 12.06 in connection with claimant's mental impairments, stating, "[t]he severity of the claimant's mental impairment does not meet or medically equal the criteria of listings 12.04 and 1206."[29] In making this finding, the ALJ considered whether the 'paragraph B' criteria were satisfied, which requires the mental impairment to result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[30] The ALJ noted that "[a] marked limitation means more than moderate but less than extreme."[31] The ALJ determined "[i]n activities of daily living, the claimant has mild restriction;"[32] "[i]n social functioning, the claimant has moderate difficulties,"[33] "[w]ith regard to concentration, persistence or pace, the claimant has mild difficulties;"[34] and "the claimant has experienced no episodes of decompensation, which have been of extended duration."[35]

21. Id.

22. Id.

23. Id. at 11–12 (citing 20 C.F.R. §§ 404.1509, 404.1512(g), 404.1520(a)–(g), 404.1521, 404.1525, 404.1526, 404.1545, 404.1560(b) and (c), 404.1572(a) and (b), 404.1574, 404.1575; and Security Rulings ("SSR") 85–28, 96–3p, 96–4p, 96–8p)).

24. Id. at 12–21.

25. Id. at 12 (citing 20 C.F.R. § 404.1571 et seq.).

26. Id. (citing 20 C.F.R. §§ 404.1520(c)).

27. Id. at 13 (citing 20 C.F.R. §§ 1520(d), 404.1525 and 404.1526).

28. Id.

29. Id.

30. Id.

31. Id.

32. Id. at 14.

33. Id.

34. Id.

35. Id. at 15.

The ALJ considered the October 25, 2012 mental status exam performed by Edwin Gerwell, Ph.D.[36] Claimant reported to Dr. Gerwell that she "was able to attend to all of her own personal care needs, although she reported finding these tasks difficult," "did little in the way of cleaning or household chores, apart from helping to fold laundry and make the bed," "was no longer able to drive and relied on family for rides," "could not cook, but was able to prepare simple meals as long as her husband opened containers for her," and "managed her own finances."[37] The ALJ noted Dr. Gerwell's report stated that claimant "was well oriented to time, date, place, and person," her remote, immediate, and recent memory were average, "[h]er insight appeared average" and "[s]he seemed to have a reasonable understanding of her situation and problems," but "her judgment appeared a little below average."[38] Dr. Gerwell "assessed major depressive disorder, recurrent and anxiety disorder not otherwise specified."[39] The ALJ stated "[g]iven claimant's severe mental impairments, the undersigned limited claimant to occasional interactions with the public."[40]

The ALJ also stated he "considered whether the 'paragraph C' criteria are satisfied."[41] The ALJ determined "the evidence fails to establish the presence of 'paragraph C' criteria" with regard to listing 12.04 and 12.06.[42]

**Residual functional capacity finding.** Having determined that plaintiff suffered from severe impairments that did not meet or equal a listed impairment, and before considering step 4, the ALJ proceeded to assess plaintiff's RFC. The ALJ stated that he had considered all of claimant's symptoms and the extent to which her symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence," based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96–4p and 96–7p.[43] The ALJ confirmed that he had considered the opinion evidence, as required by 20 C.F.R. §§ 404.1527 and SSRs 96–2p, 96–5p, 96–6p, and 06–3p.[44] The ALJ also indicated that he had used the two-step process applicable to RFC determinations.[45] Under that process, the ALJ must first determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms."[46] Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning."[47] The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the statements based on a consideration of the entire case record."[48]

36. Id.

37. Id. at 14 (citing Ex. 6F/2–3).

38. Id. at 15.

39. Id. (citing Ex. 6F/4).

40. Id.

41. Id.

42. Id.

43. Id. at 16.

44. Id.

45. Id.

46. Id.

47. Id.

48. Id.

The ALJ assessed plaintiff with the following RFC:

> [C]laimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b). Claimant is limited to lifting 20 pounds occasionally and 10 pounds frequently, standing and/or walking 2 hours in an 8 hour workday, and sitting 8 hours in an 8 hour workday. She is limited to occasional (one third of an 8 hour day) balancing, stooping, kneeling, and crouching. She is also limited to occasional interactions with the public.

In assessing plaintiff's RFC, the ALJ considered claimant's testimony that she "cannot return to work because she cannot drive anymore, she cannot control her anxiety, bend like she did before," and has "problems walking and maintaining her balance."[49] The claimant also testified "she feels tired often," has "problems sleeping," "tak[es] two hour naps during the day" and "takes Seroquel for sleep," but "has dry mouth side effects from medication."[50] Claimant reported "she did not go out often," but went "grocery shopping with her husband once a month."[51] The ALJ noted that "[c]laimant cried during most [of] her testimony."[52]

The ALJ found that "claimant's medically determined impairments could reasonably be expected to cause the alleged symptoms," but "claimant's allegations concerning the degree and frequency of limitations are not fully credible and were exaggerated at the hearing because they are not supported by the longitudinal objective medical evidence of record."[53] The ALJ determined " '[c]laimant's physical examinations support some work restrictions but not to the extent as to preclude all work activity."[54] The ALJ further determined "[g]iven claimant's severe physical impairments, the undersigned limited claimant to a restricted range of light work."[55] The ALJ found "claimant's allegations of disabling depression and anxiety are inconsistent with claimant's lack of mental health treatment" and claimant "receives Xanax for anxiety from her primary care physician."[56] Ultimately, the ALJ determined "[t]he medical evidence shows claimant's medications stabilize her physical and mental impairments and her presentation at the hearing was not consistent with the objective findings."[57]

The ALJ considered the ME's testimony at the hearing, during which the ME opined that "claimant is limited to lifting 20 pounds occasionally and 10 pounds frequently, standing and/or walking 2–3 hours in an 8 hour workday, and sitting 8 hours in an 8 hour workday."[58] The ME also stated claimant "should avoid work climbing ladders, scaffolds, or dangerous heights and she is limited to occasional postural limitations."[59] The ALJ gave "significant weight to the opinion of [the ME] because it is generally consistent with the longitudinal objective medial evidence of record."[60]

The ALJ considered Mark Smith, M.D.'s July 3, 2014 questionnaire indicating "claimant's diagnoses of neuropathy, anxiety, hypertension, and diabetes mellitus

49. Id.

50. Id.

51. Id.

52. Id.

53. Id. at 16–17.

54. Id. at 17.

55. Id.

56. Id.

57. Id.

58. Id.

59. Id.

60. Id.

limited claimant to sitting, standing, and walking 0–1 hour each in an eight hour workday," and "lifting and carrying 0–5 pounds occasionally."[61] Dr. Smith also opined "claimant was unable to focus due to eye problems and would likely miss work more than three times per month due to her impairments or treatment."[62] On January 23, 2013, Dr. Smith "drafted a letter indicating claimant was unable to work."[63] The ALJ gave "little weight to the opinions of Dr. Smith because they are not supported by the longitudinal objective medical evidence of record and the treating records from Dr. Smith himself."[64] In support, the ALJ noted on June 19, 2012, Dr. Smith "assessed hypertension, diverticulitis, and neuropathy without examination of claimant's extremities."[65]

The ALJ also considered Hameed Dosunmu, M.D.'s October 5, 2012 internal medicine consultative examination.[66] Dr. Dosunmu's report noted that: (1) "[c]laimant was able to get on and off the examination table without difficulty;" (2) "ha[d] an unsteady gait," "was not able to stand on heels and toes," "was not able to bend all the way over," and "was not able to squat all the way down" "due to lower due to lower extremity weakness;" (3) "[s]traight leg raise was negative;" (4) "[u]pper and lower extremities showed no joint tenderness or enlargement and normal range of motion;" (5) "[m]otor strength was 4/5 in the bilateral lower extremities and 5/5 in

bilateral upper extremities;" (6) "[h]andgrip was 4/5 bilaterally and fine finger movements were normal."[67] Dr. Dosunmu assessed "status post diverticulitis status post colostomy status post reversal, status post pelvic abscess status post total hysterectomy, diabetes mellitus type II with complications, diabetic neuropathy bilateral lower extremities and hypertensive heart disease."[68]

The ALJ considered that on May 24, 2013, "[c]laimant presented at Macgregor Medical Center" "and [the] physical exam showed depressed mood and positive numbness complaints over the lower extremity to light touch."[69] Claimant was assessed "hypertension, neuropathy, and depression."[70] On September 11, 2013, claimant "reported doing well with Norco for neuropathy and Xanax for anxiety."[71] On January 9, 2014, "[c]laimant reported stable neuropathy" and "tenderness over the legs and feet."[72] On May 15, 2014, "claimant denied medication side effects and refilled prescriptions."[73] The ALJ found this was "[i]nconsistent with claimant's testimony of side effects from medications that prevent her from working."[74]

The ALJ also considered the State Agency Disability Determination Services ("DDS") mental RFC opinions, but gave them "little weight."[75] The ALJ determined "the longitudinal objective medical records" "supports a mild restriction in

61. Id. at 18.

62. Id. (citing Ex. 14E).

63. Id. (citing Ex. 8F/82).

64. Id.

65. Id. (citing Ex. 4F/8).

66. Id.

67. Id. at 19.

68. Id.

69. Id.

70. Id. (citing Ex. 8F/35).

71. Id. (citing Ex. 8F/32).

72. Id. (citing Ex. 8F/30–31).

73. Id. (citing Ex. 8F/28).

74. Id.

75. Id.

activities of daily living (not moderate as found by DDS), moderate restriction in social function, mild limits in maintaining concentration, persistence, and pace (not moderate as found by DDS), and no episodes of decompensating."[76] The ALJ also considered the DDS physical RFC opinions, but gave them "little weight" because "the objective medical evidence supports standing/walking[ ] only 2 hours in an 8 hour workday."[77]

**Step 4 findings.** The ALJ determined that claimant was unable to perform her past relevant work as an administrative secretary.[78] The ALJ stated that the "VE testified that claimant could not return to past work."[79]

**Step 5 findings.** At step five, the ALJ stated that claimant was born on March 11, 1960, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.[80] He noted that claimant has "a limited education," and is able to communicate in English.[81] The ALJ stated that transferability of job skills was not an issue because application of the medical-vocational rule framework supported a finding that claimant was not disabled, regardless of whether she had transferable job skills.[82] Considering claimant's age, education, work experience, and RFC, in conjunction with the Medical–Vocational Guidelines, the ALJ determined "there are jobs that exist in significant numbers in the national economy that the claimant can perform."[83]

The ALJ noted that, in determining whether claimant could make a successful adjustment to other work, he was required to consider claimant's RFC, age, education, and work experience "in conjunction with the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Appendix 2."[84] He stated that if a claimant can perform all or substantially all of the exertional demands of work at a given level of exertion, then the guideline rules direct a finding of either disabled or not disabled depending on the plaintiff's specific vocational profile.[85] When a claimant cannot perform substantially all of the exertional demands of work at a given level of exertion, and/or has nonexertional limitations, the guideline rules are used as a "framework for decision making unless there is a rule that directs a conclusion of 'disabled' without considering the additional exertional and/or nonexertional limitations."[86] The ALJ explained that, if a plaintiff only has nonexertional limitations, § 204.00 in the Medical–Vocational Guidelines provides a framework for decision making.[87]

The ALJ also explained that if a claimant has the RFC to perform a full range of light work, a finding of "not disabled" would be directed by Medical–Vocational Rule 202.11.[88] The ALJ found that claimant's ability to perform "all or substantially all of the requirements of this level of

76. Id.

77. Id.

78. Id.

79. Id. (citing 20 C.F.R. § 404.1565).

80. Id. (citing 20 C.F.R. § 404.1563).

81. Id. at 20 (citing 20 C.F.R. § 404.1564).

82. Id. (citing SSR 82–41, and 20 C.F.R. pt. 404, subpt. P, app. 2).

83. Id. (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).

84. Id.

85. Id. (citing SSR 83–11).

86. Id. (citing SSRs 83–12 and 83–14).

87. Id. (citing SSR 85–15).

88. Id.

work has been impeded by additional limitations."[89] To determine the extent to which claimant's limitations eroded the unskilled light occupational base, the ALJ asked the VE whether jobs existed in the national economy for an individual with claimant's age, education, work experience, and RFC. The VE testified that such an individual "would be able to perform the requirements of representative occupations" such as photograph finisher (976.487–101), mail clerk (private office setting) (209.687–026) and stock checker in apparel (299.667–014).[90]

The ALJ accepted this testimony pursuant to SSR 00–4p.[91] Accordingly, the ALJ found that plaintiff had not been under a disability, as defined by the Social Security Act, from January 27, 2012, through the date of his decision,[92] and was "not disabled under sections 216(i)," or "223(d) of the Social Security Act."[93]

## B. Plaintiff's Contentions

On September 23, 2016, plaintiff filed a brief seeking review of the Commissioner's decision and asking the Court to reverse and remand to the Commissioner "for additional administrative proceedings to address the significant legal errors."[94] Plaintiff's brief presents two main arguments. First, plaintiff argues that plaintiff "must be found disabled if she is limited to sedentary work" and, essentially, the ALJ's RFC determination is one for sedentary work and, therefore, should have been found to be disabled.[95] Second, plaintiff argues the ALJ erred

> when he failed to defer to the opinion of treating doctor Mark Smith, M.D., failed to accept or explain the diminished grip strength assessed by examining doctor Hameed A. Dosunmu, M.D., and substituted his judgment for examining psychologist Edwin L. Gerwell, Ph.D.[96]

On October 13, 2015, the Commissioner filed a responsive brief, arguing, in sum, that the ALJ's decision is supported by substantial evidence and relevant legal standards.[97]

## VI. ARGUMENTS AND CONCLUSIONS OF LAW

In this section the Court will discuss in greater detail the applicable legal standards before applying those standards to plaintiff's specific claims as raised in his brief.

## A. Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[98] Each aged, blind or disabled individual who meets certain income and resources limitations is entitled to receive supplemental security income.[99] The term

---

89. Id.

90. Id. The ALJ noted there are approximately 6,800 photograph finisher jobs in the Texas regional economy and 450,000 jobs in the U.S. national economy; 50,000 mail clerk (private office setting) jobs in the Texas regional economy and 1,000,000 jobs in the U.S. national economy; and 10,000 stock checker in apparel jobs in the Texas regional economy and 800,000 jobs in the U.S. national economy. Id.

91. Id.

92. Id. (citing 20 C.F.R. § 404.1520(g)).

93. Id. at 20.

94. Docket no. 12 at 16.

95. Id. at 1.

96. Id.

97. Docket no. 15 at 14.

98. 42 U.S.C. § 423(a)(1) (1995).

99. Id. § 1382 (a).

"disabled" or "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.[100] A person shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work existing in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether he would be hired if she applied for work.[101]

## B. Evaluation Process and Burden of Proof

 Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[102] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[103] The first step involves determining whether the claimant is currently engaged in substantial gainful activity. If so, the claimant will be found not disabled regardless of her medical condition or her age, education, and work experience. The second step involves determining whether the claimant's impairment is severe. If it is not severe, the claimant is deemed not disabled. In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments. If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, and work experience. If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of her past work. If she can still do this kind of work, she is not disabled. If she cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities and her age, education, and work experience, to do other work. If she cannot do other work, she will be found to be disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[104] Once she has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that claimant is capable of performing.[105] If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work.[106]

## C. Plaintiff's Claims in Appealing the ALJ's Decision

Plaintiff first argues the ALJ's RFC finding "does not actually represent a light RFC under Agency policy."[107] Specifically, plaintiff argues "an RFC that limits a claimant to approximately 2 hours of standing and walking in an 8-hour work-

---

100. Id. § 1382c(a)(3)(A).

101. Id. § 1382c(a)(3)(B).

102. 20 C.F.R. § 404.1520 (2011).

103. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

104. Id. at 564.

105. Anderson v. Sullivan, 887 F.2d 630, 632 (5th Cir. 1989).

106. Id. at 632–33.

107. Docket no. 12 at 4.

day is actually an RFC for sedentary work."[108] Further, plaintiff argues "Agency grid rules require that [plaintiff] be found disabled if she is limited to sedentary work."[109] Plaintiff asserts "the three jobs identified by the [VE]" are sedentary jobs "under the Commissioner's definitions of light versus sedentary" "if performed in accordance with the ALJ's RFC finding."[110] Plaintiff argues "the ALJ's application of the wrong grid rule" was not harmless.[111] In support, plaintiff relies on Campbell v. Astrue and Ferdin v. Colvin.[112]

The Commissioner responds that "when the ALJ chose to find two hours of standing and/or walking as an RFC limitation, the ALJ clearly was not intending to reduce Plaintiff's overall RFC from light to sedentary."[113] The Commissioner argues because plaintiff's "exertional capacity [did] not correspond exactly to the criteria of one of the physical exertional categories, the ALJ "consult[ed] with a VE to clarify the available job base" and the ALJ's "reliance on the VE's uncontradicted testimony was appropriate."[114] In support, the Commissioner relies on Ambrose v. Colvin.[115]

Pursuant to the Code of Federal Regulations, "[t]o determine the physical exertion requirements of work in the national economy, [the Social Security Administration] classif[ies] jobs as sedentary, light, medium, heavy, and very heavy."[116] The applicable regulations defining light work and sedentary work provide the following definitions:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.[117]

---

108. Id. (citing SSR 83–10, 1983 WL 31251, at *5–6).

109. Id. at 5 (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1, Rule 201.10).

110. Id.

111. Id. at 7.

112. Id. at 6–7 (citing Campbell v. Astrue, No. 09–5356, 2010 WL 4689521 (E.D. Pa. Nov. 2, 2010) and Ferdin v. Colvin, No. SA–15–CA–29–DAE, 2015 WL 7767980 (W.D. Tex. Jul. 30, 2015)).

113. Docket no 15 at 11.

114. Id. at 13.

115. Id. at 11–12 (citing Ambrose v. Colvin, No. 3:14–CA–1618, 2015 WL 877790 (M.D. Pa. Mar. 2, 2015)).

116. 20 C.F.R. § 404.1567.

117. 20 C.F.R. § 404.1567(a), (b), § 416.967(a), (b).

Further, as set forth in a policy statement issued by the Social Security Administration:

> **"Frequent" means occurring from one-third to two-thirds of the time.** Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, **the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.** Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.
>
> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, **periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday.** Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.[118]

Additionally, "[i]n situations where the rules would direct different conclusions, and the individuals exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, ... [VE] assistance is advisable for these types of cases."[119]

Here, the ALJ determined "the claimant's ability to perform all or substantially all of the requirements of [light work] has been impeded by additional limitations."[120] The ALJ assessed plaintiff with an RFC to frequently lift up to ten pounds, occasionally lift up to twenty pounds, only stand or walk for two hours in an 8–hour workday, sit for eight hours in an 8–hour workday, and occasional balancing, stooping, kneeling, and crouching.[121] Because plaintiff could not perform the full range of light work, the ALJ solicited testimony from the VE and included all of the RFC limitations in her hypothetical, including that plaintiff was limited to only occasional walking and standing.[122] In response, the VE testified that someone with plaintiff's impairments could not perform plaintiff's past relevant work, but that the hypothetical claimant could perform other jobs classified as "light," including photograph finisher, mail clerk in a private office setting, and stock checker.[123] The VE also testified to the number of the listed light jobs existing in the state and national economies that could be performed by someone with plaintiff's impairments.[124]

Plaintiff asserts that the ALJ "may not rely on evidence presented by [the] VE" because it "is inconsistent with the controlling regulation definition of light work."[125] Plaintiff relies on Ferdin v. Colvin in support of her contention that an RFC for light work is "contradicted by a limitation

---

118. SSR 83–10 (emphasis added).

119. SSR 83–12.

120. TR 20.

121. Id. at 16.

122. Id. at 45–47.

123. Id. at 46.

124. Id. at 46–47.

125. Docket no. 12 at 6.

to 2 hours of standing and walking."[126] In Ferdin—which is binding authority on this Court—the Court remanded plaintiff's case to the Commissioner on facts similar to the instant case.[127] In Ferdin, the ALJ assessed plaintiff with the following RFC:

claimant has the residual functional capacity to perform a range of light work, lifting/carrying 20 pounds occasionally, lifting/carrying 10 pounds frequently, standing/walking 2 hours in an 8 hour day with the option to use a cane for ambulation, sitting 6 hours in an 8 hour day, occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling, and never climbing ladders/ropes/scaffolds or pushing/pulling with the upper extremities.[128]

Following Campbell v. Astrue, the Court in Ferdin determined the ALJ's RFC "contain[ed] inherent contradictions and incongruities:" (1) "the ALJ assessed an RFC to perform a range of light work, but limited plaintiff to two hours of standing or walking in an 8–hour day, which equates to one-fourth of an 8–hour workday" and "[u]nder policy statement SSR 83–10, work at the light exertional level requires standing or walking from one-third to two-thirds of an 8–hour workday, which is a greater period of time that the two hours to which the ALJ limited plaintiff;" and (2) " 'the principal finding' as to plaintiff 'that corresponded with the exertional capabilities at the 'light' level was the finding about the amount of weight he could lift: up to 20 lbs. occasionally and 10 lbs. frequently' " and "[u]nder policy statement SSR 83–10,

'occasional' means up to one-third of an 8–hour workday, while 'frequent' is defined as one-third to two-thirds of an 8–hour workday, and 'frequent lifting or carrying requires being on one's feet up to two-thirds of a workday.' "[129] The Ferdin court distinguished Ambrose v. Colvin, in which the district court determined "[p]laintiff was able to engage in a limited range of light work" and affirmed the ALJ's decision,[130] stating:

The ALJ in Ambrose limited the RFC to light work with occasional standing and walking, meaning Ambrose could stand or walk for up to one-third of the 8–hour workday. Here, the ALJ explicitly limited plaintiff's ability to stand or walk to two hours in an 8–hour workday, equal to one-fourth of the 8–hour workday, or less than the one-third required at the 'light' exertional level.[131]

The Ferdin court held "[b]ecause the ALJ's RFC and step 5 decisions do not comport with agency regulations, the Court cannot determine the ALJ has fulfilled this duty" and remanded the case to the Commissioner.[132]

 Here, as in Ferdin, the ALJ assessed an RFC to perform a range of light work, but limited plaintiff to two hours of standing or walking in an 8–hour workday, which equates to one-fourth of an 8–hour workday.[133] Under policy statement SSR 83–10, work at the light exertional level requires standing or walking from one-third to two-thirds of an 8–hour workday, which is a greater period of time

---

126. Docket no. 12 at 7.

127. Ferdin, 2015 WL 7767980, at *11.

128. Id., at *4.

129. Id., at *11. The Ferdin court also noted "light work may permit 'sitting most of the time' but this requires 'some pushing and pulling of arm or leg controls" and "[t]he ALJ's RFC finding limits plaintiff to never pushing and pulling with the upper extremities." Id.

130. Ambrose, 2015 WL 877790, at *15.

131. Ferdin, 2015 WL 7767980, at *10.

132. Id.

133. TR 15.

than the two hours to which the ALJ limited plaintiff.[134] Further, and as in _Ferdin_, "the principal finding" as to plaintiff "that corresponded with the exertional capabilities at the 'light' level was the finding about the amount of weight she could lift: up to 20 lbs. occasionally and 10 lbs. frequently."[135] Under policy statement SSR 83–10, "occasional" means up to one-third of an 8–hour workday, while "frequent" is defined as one-third to two-thirds of an 8–hour workday, and "frequent lifting or carrying requires being on one's feet up to two-thirds of a workday."[136] Therefore, as in _Ferdin_, the ALJ's RFC contains inherent contradictions and incongruities. Thus, under the regulatory definitions as applied by the ALJ's RFC determination, plaintiff may be unable to perform substantially all of the requirements of light work, as she is limited to two hours of standing or walking in an 8–hour workday (equal to one-fourth of the day). The Commissioner provides no argument or authority to distinguish _Ferdin_.[137]

■ Not all errors warrant reversal or remand. The Court may not reverse or remand for the ALJ's failure to comply with a regulation without determining whether the error was harmless.[138] An error is harmless if it is inconceivable to conclude that a different result would occur absent the error.[139] Under the Medical Vocational Guidelines, if plaintiff was found to be able to only undertake sedentary work, the Guidelines may have mandated a finding that he was disabled.[140] Thus, resolution of these inconsistencies could change the outcome of this case. "When apparent internal inconsistencies in an ALJ's residual functional capacity assessment may have an outcome determinative impact upon a social security determination under the Medical Vocational Guideline grids, courts recognize that a remand to clarify these inconsistencies is often necessary."[141] In this case, because the difference between an RFC to perform either sedentary or light work may determine the outcome of this case, and the ALJ's assessment of plaintiff's RFC con-

---

134. SSR 83–10.

135. _Compare_ TR 16 _with_ _Ferdin_, 2015 WL 7767980, at *11.

136. SSR 83–10.

137. The Commissioner does argue "[a]n ALJ may properly rely upon a VE's uncontradicted testimony" (docket no. 15 at 13), but, as discussed, "due to the errors made by the ALJ involving Plaintiff's RFC, the Court cannot determine whether the ALJ accurately communicated all of Plaintiff's impairments" to the VE. _Bisceglia v. Colvin_, 173 F.Supp.3d 326, 336 (E.D. Va. 2016). The Commissioner also argues that plaintiff has "waived any argument regarding potential conflict between the _DOT_ and regulations with the VE testimony at step five" because plaintiff's attorney "did not question the VE regarding whether standing and walking for a maximum of two hours in an eight-hour work day was compatible with light work" or the "requirements of [the DOT] light work positions that the VE stated Plaintiff could still per-

form." Docket no. 15 at 13–14. But, "[t]he fact that [plaintiff's] counsel was afforded an opportunity to ask follow-up questions [does] not salvage the hypothetical as a proper basis to determine non-disability." _Garza v. Astrue_, No. SA–08–CA–789–XR, 2010 WL 918343 *4 (W.D.Tex. Mar. 11, 2010) (citing _Boyd v. Apfel_, 239 F.3d 698, 707 (5th Cir. 2001)).

138. _See_ _Frank v. Barnhart_, 326 F.3d 618, 622 (5th Cir. 2003) (citing _Morris v. Bowen_, 864 F.2d 333, 336 (5th Cir. 1988) (applying harmless error standard in Social Security case)).

139. _Id._; _Fisher v. Bowen_, 869 F.2d 1055, 1057 (7th Cir. 1989).

140. _See_ 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201.00.

141. _Riley v. Colvin_, No. 3:13–CV–1223, 2014 WL 4796602, at *8 (M.D. Pa. Sept. 26, 2014) (comparing _Campbell_, No. 09–5356, 2010 WL 4689521 with _Anderson v. Astrue_, 825 F.Supp.2d 487, 496 (D. Del. 2011)).

tains these internal inconsistencies, a remand of this case is required to clarify this question.

 In sum, it is the ALJ's "duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits."[142] Because the ALJ's RFC and step 5 decisions do not comport with agency regulations, the Court cannot determine the ALJ has fulfilled this duty.[143]

## VII. RECOMMENDATION and ORDER

For the reasons discussed, it is **recommended** that plaintiff's request for a remand[144] be **GRANTED** and the ALJ's decision be **REVERSED** and **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for reconsideration. Further, it is **ordered** the case is **RETURNED** to the District Judge.

## VIII. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within **14 days** after being served with a copy, unless this time period is modified by the District Court. A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

 A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a *de novo* determination by the District Court.[145] Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[146]

---

**142.** Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995).

**143.** Because this Court recommends remanding this case to the Commissioner for the reasons stated, this report does not address plaintiff's argument that the ALJ erred because, in sum, the ALJ did not defer to, or appropriately address, the opinions of one treating physician and two examining health care providers. See docket no. 12 at 1.

**144.** Docket no. 12 at 16.

**145.** See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

**146.** Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir. 1996).